(91 App. Div. 510.)

### VIEMEISTER v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. March 11, 1904.)

1. ELEVATED RAILROADS—INJURY TO PASSENGERS—OVERCROWDING CAR.

An elevated railroad company, having power to limit the number of passengers who shall go onto the station platform and into its cars, is liable for injury to a passenger by the overcrowding of a car, though the passengers crowded on of their own accord, and were not pushed on by the guard.

Woodward, J., dissenting.

Appeal from Trial Term, Queens County.

Action by Edmund C. Viemeister against the Brooklyn Heights Railroad Company. From a judgment on a verdict for defendant, and from an order denying a motion for a new trial on the minutes, plaintiff appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Robert Stewart, for appellant.
I. R. Oeland, for respondent.

HIRSCHBERG, P. J. The plaintiff resides at Winfield, in the borough of Queens. On the 21st day of September, 1900, he boarded one of the defendant's elevated trains on the Myrtle avenue line, in the borough of Brooklyn, to go to his home, at about 6 o'clock in the afternoon. He was required to transfer at the Vanderbilt avenue station to a Ridgewood train. The platform at that station was crowded, and, when the Ridgewood train came along, it was also crowded. Nevertheless a few more could manage to get upon the train, and one of the defendant's guards standing upon the platform opened the middle door of one of the cars, and the plaintiff, with others, entered; but so many got in, that, by force of the crowd, and the possibly necessary jerk with which the car was started, the plaintiff's knee was pressed violently against one of the seats, occasioning the injury complained of.

There was some evidence that the overcrowding of the car was due not only to the natural and voluntary rush of passengers from the platform, but that the guard, against the remonstrances of those who were in the car, pushed and forced others into the car with considerable violence. Whichever way the jam was occasioned, the car was certainly overcrowded. This is a fair inference from even the testimony of the conductor, viz.:

"Q. Did they get inside of the car, or did they stand on the platform? A. Some of them squeezed their way in. How many squeezed their way in, I couldn't tell exactly. Q. Did they have to squeeze their way in from the doors? A. They just stepped in. Q. You said they squeezed their way in. What made them have to squeeze? A. Good many hangs around the door. There were not so many hanging around my door when we got to Vanderbilt avenue. Q. Enough to make these people have to squeeze to get by? A. Always room for more. Q. Before these passengers could get into the door, did they not have to squeeze by a number of people on the platform? A. No, sir; they had to squeeze the people that were standing inside of the door—inside the coach."

The learned trial justice charged the jury that, if the plaintiff was injured by the overcrowding of the platform or of the car, he could not recover, and that he could only recover in case his injury was inflicted by the guard in pushing more people into the car than it would safely hold. He said:

"If you should find that he was injured by a rush of people who wanted to get on board at the same time on this crowded car, without the intervention or assistance of the guard, why the railroad company could not be held responsible, because that is another risk that a man takes in a crowded city in trying to get home the same time as everybody else wants to get home. If you get on board the car that everybody else wants to get on, and you all rush together, and you get hurt, why that is something that the railroad company is not responsible for. If you do not want to get hurt, you must keep waiting until less people are traveling and there is more room. Now, that is the simple issue in this case. Was the plaintiff hurt by reason of the fact that against the protest, and when it became apparent that it was unsafe to have more people in there, the guard persisted in pushing more people in? If those are the circumstances under which the accident happened, then you would have the right to hold the railroad company responsible; otherwise not."

The plaintiff's counsel excepted to this portion of the charge, saying:

"I take an exception to that portion of your honor's charge that states that if he was forced on by other passengers, in the desire to get to his home, the company will not be liable."

And thereafter the charge was repeated at the defendant's request, as follows:

"Defendant's Counsel: The plaintiff testified he was pushed on board this car by the crowd on the platform, and that he could not recede, and that was the reason he got on, as I remember the testimony. I ask you to charge the jury, if they find that to be the fact, that he cannot recover. The Court: If that was the cause of the injury—his being pushed on by the crowd—I will charge he cannot recover. I have already charged that."

Assuming that the jury could have found from the evidence that the plaintiff was injured by the natural, voluntary, and unrestrained movements incident to the overcrowding of passengers, and without the physical aid of the guard, exerted in pushing them against each other,

a basis would have been clearly established, under the law, for a finding that the defendant was negligent. The conditions were created by the defendant, and, if they were dangerous, it was certainly responsible for them. The remarks of the learned trial court may, perhaps, be conceded to be sound when applied to a road which is operated upon the surface of a public highway, but have no application to a road built upon private property, to which the company controls access, and where a crowd cannot congregate in dangerous numbers unless the individuals composing it pay fares to the company in advance. As was said by Mr. Justice Bartlett in the case of Dawson v. New York & Brooklyn Bridge, 31 App. Div. 537, at page 539, 52 N. Y. Supp. 133, "The defendants in the case at bar exercised complete control over the avenues of access to the train upon which the plaintiff took passage;" and it was accordingly held that, it being within their power to limit the number of passengers who should be permitted to go upon the station platform and into the cars, it was their duty to exercise that power, in obedience to the obligation imposed by law upon common carriers so to regulate the movements and disposition of those whom they undertake to transport as to preserve the safety of all.

The converse of the proposition submitted to the jury in this case was expressly adopted by the Court of Appeals in Graham v. Manhattan R. Co., 149 N. Y. 336, 43 N. E. 917; and it was therein held that whether the overcrowding of railroad cars is negligence is a question of fact, and that proof of the omission of an elevated railroad company to furnish a safe place to ride to a passenger whom, by stopping its train at his station of embarkation and by express invitation of its employé, it invites on board, is evidence tending to show negligence on its part. The court said (page 340, 149 N. Y., page 918, 43 N. E.):

"The stopping of the train at Fifty-Ninth street was an invitation to the plaintiff to take passage thereon. There was also an express invitation by one of the defendant's employés. The defendant was therefore bound to furnish the plaintiff a safe place to ride. Proof of the omission to do so was evidence tending to show the defendant's negligence. Werle v. L. I. R. Co., 98 N. Y. 650."

See, also, McGearty v. Manhattan R. Co., 15 App. Div. 2, 43 N. Y. Supp. 1086; Tonkins v. New York Ferry Co., 47 Hun, 562, affirmed in 113 N. Y. 653, 21 N. E. 414; Merwin v. Manhattan Railway Co., 48 Hun, 608, 1 N. Y. Supp. 267, affirmed in 113 N. Y. 659, 21 N. E. 415; Cattano v. Metropolitan Street Ry. Co., 173 N. Y. 565, 66 N. E. 563; and Dittmar v. Brooklyn Heights R. Co. (decided by this court at this term) 86 N. Y. Supp. 878.

In the view taken, it is not deemed necessary to discuss the other questions presented by the record, as they may not be raised upon another trial.

The judgment and order should be reversed. All concur, except WOODWARD, J., who dissents.

WOODWARD, J. (dissenting). It seems to me that the error pointed out by the Presiding Justice was corrected. Counsel took an "exception to that portion of your honor's charge that states that, if he was forced on by other passengers in the desire to get to his home,

the company will not be liable"; and, if the matter had ended here, error would have been presented. But counsel continued, "And I ask you to charge, in view of that portion of the charge, that if, though forced by other passengers on the car, if he boarded the car in safety, and thereafter the guard pushed other people in and caused this accident, the company is liable;" and the court responded, "Certainly, I charge that." This was the plaintiff's theory of the case, as had already been charged, and it seems to me it corrected the error. I do not think the case presents reversible error. It was sent to the jury upon lines satisfactory to the plaintiff, who took no exception to the charge, other than that noted. The plaintiff did make a further request to charge, to which the court gave a modified assent, to which the plaintiff took no exception; and, the jury having found adversely to the plaintiff, there appears no good reason for a reversal.